JUDGE WILLIAMS
delivered the opinion op the court:
In pursuance of the directions of section 4, article 8, of the State Constitution, that “ the privilege of free suffrage shall be supported by laws regulating elections,” the Legislature, by section 1, article 3, chapter 32, Revised Statutes (1 Stant., 432), have provided for the appointment of “fudges” of elections; and, in the same article, have provided certain rules by which said judges shall determine whether the person offering to vote is entitled to do so, which has been amended by subsequent legislation.
(These officers, so appointed for the purposes of holding elections and determining the rights of the elector to exercise the elective franchise, are, to all intents, for such purposes, judicial, fully vested with the power, and under a solemn duty, to adjudicate whether the vote proposed be legal or illegal, and if the latter, to reject the same; and this court has heretofore properly so adjudged.
For knowingly and unlawfully receiving the vote of any one not qualified to vote according to law, or for so rejecting a legal vote, imprisonment from one to six months, or a fine of from fifty to five hundred dollars, is denounced by section 8, article 12, chapter 32, Revised Statutes. Besides, the officer, so knowingly and unlawfully *137 rejecting such vote would be liable in an action for damages to the party aggrieved.
Still, neither law nor public policy require that such officers should judge at their peril. If their judgment be pure and honest, however erroneous, they are neither liable to the Commonwealth nor the party refused.
If every officer of elections, who might erroneously adjudicate the laws regulating elections, should incur either the heavy penalties denounced by the statute, or the personal responsibility to the party whose vote may have been rejected, it would, likely, soon be difficult to obtain such officers.
Although the act of March 11, 1862, known as the expatriation act, had been repealed when appellant offered to vote, yet a majority of this court had not then held it as unconstitutional. Had it been sustained as valid law, the question whether the constitutional term of residence, after its repeal, would not be essential to a restoration of citizenship, is of such complicated character, as to probbably involve an honest difference of opinion among the legal profession; and a decision, either one way or the other, as to this, by such persons as are very generally selected as judges of election, of itself would be no evidence of malice, or wantonness, or oppression.
It was competent for the defendants, or either of them, to show they had taken the advice of persons learned in the law; and if such advice was honestly sought and given, with a view to administer the law, and not for mere partisan purposes, and with the illegal intent of excluding votes which they believed to be legal, this would tend to rebut any presumption of malice.
As to these things, we perceive no error prejudicial to appellant, either in the admission of evidence or the giving of instructions to the jury.
*138 The appellant offered to prove what he said at the time he joined the Confederate army, and when about to start out of the State, as to the purposes of his absence, and his intention to return, by way of showing his absence was for temporary purposes, and with no intention of removal. But this was rejected. It does not appear that this was made known to the judges of election at the time he offered to vote, nor did -.he then offer to prove it.
But defendants, in their answer, deny that he was, at the time, a citizen, or legally entitled to vote; and obtained an instruction from the court to the -effect that his joining the Confederate army, and absence from the State •from 1862 to 1865, and taking an oath of allegiance to the Confederate government, disqualified him as a voter, “ unless, when he left Kentucky, he did so with the intention to return to his home in Kentucky so soon as the war was over
However unnecessary this issue and. this instruction may have been, yet, as defendants saw proper to make it, and get an instruction thereon, plaintiff should have been permitted to show with what intention, and for what purpose, he left the State; and his statements made at the time of departure were competent to go to the jury for their consideration.
For this error alone the judgment is reversed, with directions for a new trial, and further proceedings in conformity herewith.